UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:09-cr-05703-DGE |
| Plaintiff, | ORDER DENYING PETITION FOR WRIT OF CORAM NOBIS |
| v. | |
| LAWANDA JOHNSON, | |
| Defendant. | |

This matter comes before the Court on Ms. Lawanda Johnson's petition for a writ of error coram nobis.  (Dkt. No. 720.)  For the reasons discussed below, Ms. Johnson's petition is DENIED.  The Court further DECLINES Ms. Johnson's request for it take judicial notice of certain document excerpts.  (Dkt. No. 732.)

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In 2011, following a trial in this Court, a jury found Petitioner guilty on multiple counts of health care fraud and filing a false tax return.  (Dkt. No. 561.)  Petitioner's co-defendant (and son), Dr. Antoine Johnson was also convicted of health care fraud, tax fraud, and distribution of

controlled substances.  (Dkt. No. 557.)  The charges against the Johnsons stemmed from "upcoding" at Dr. Johnson's medical practice, wherein the Johnsons would charge health insurance companies for a higher level of service than was actually performed by submitting claims with a higher Current Procedural Terminology ("CPT") code.  (Dkt. No. 80.)

Petitioner was sentenced to 87 months in prison and ordered to pay restitution of $1,227,746.34.  (Dkt. Nos. 630 and 635.)  Petitioner's conviction was upheld by the United States Court of Appeals for the Ninth Circuit in 2013, and this Court denied Petitioner's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 in 2015.  *U.S. v. Johnson*, 540 Fed. Appx. 573 (9th Cir. 2013); *Johnson v. U.S.*, No. 3:14-cv-06000-RBL, Dkt. No. 11 (W.D. Wash. June 11, 2015).  Ms. Johnson was released from custody in 2015 and her term of supervised release ended in 2018.  (Dkt. No. 722 at 1.)

On February 28, 2022, Ms. Johnson filed a petition for a writ of coram nobis and a motion for appointment of counsel.  (Dkt. No. 720 at 1-2.)  On March 9, 2022, Petitioner stated that she was unable to afford adequate representation to pursue her petition, and requested that the Court appoint an attorney to represent her.  (Dkt. No. 721.)

The Government responded to Petitioner's motion to appoint counsel, arguing that Petitioner has no right to counsel in a post-conviction proceeding and noting that Ms. Johnson's petition for a writ of coram nobis does not appear to meet the high standard necessary for the Court to grant this remedy.  (Dkt. No. 722.)

On March 15, 2022, the Court issued an order informing Petitioner that federal courts grant writs of coram nobis sparingly, and directing Petitioner to show cause why her motion to appoint counsel should not be denied.  (Dkt. No. 723.)

On March 22, 2022, Petitioner responded to the Court's order to show cause. (Dkt. No. 724.) In her response, Ms. Johnson explained that her petition for a writ of coram nobis is aimed at relieving her of the obligation of ongoing restitution payments, which according to her, consume 25 percent of her retirement income, and have left her unable to secure funds to pay an attorney. (Dkt. No. 724 at 1-2.) Ms. Johnson, a former teacher, also stated that she lost her teaching credentials due to her convictions, and will be unable to serve as a substitute teacher unless her coram nobis petition is granted. (*Id*. at 13.)

On April 18, 2022, this Court issued an order denying Ms. Johnson's motion to appoint counsel and ordering the Government to respond to her petition. (Dkt. No. 727.) On May 31, 2022, the Government responded (Dkt. No. 728) and Ms. Johnson replied shortly thereafter. (Dkt. No. 730.)

## II.    LEGAL STANDARD

The writ of coram nobis "provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *United States v. Kwan*, 407 F.3d 1005, 1009–10 (9th Cir. 2005), citing *Estate of McKinney By and Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir.1995). When these errors are of "the most fundamental character," such that the proceeding itself is rendered "invalid," the writ of coram nobis permits a court to vacate its judgments. *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987) (internal citation omitted).

The United States Supreme Court has noted that a writ of coram nobis is "of the same general character" as a motion to vacate, set aside or correct a sentence made pursuant to 28 U.S.C. § 2255. *United States v. Morgan*, 346 U.S. 502, 512 n.4 (1954). Whereas petitions for habeas corpus relief and motions for relief under 28 U.S.C. § 2255 may only be filed by persons

ORDER DENYING PETITION FOR WRIT OF CORAM NOBIS - 3

1    who are in government custody, "[t]he writ of error coram nobis affords a remedy to attack a

2    conviction when the petitioner has served his sentence and is no longer in custody."  *Kwan*, 407

3    F.3d at 1009–10.

4        Timing aside, the two post-conviction petitions serve similar purposes, both providing a

5    remedy that permits a petitioner to collaterally attack a sentence with serious constitutional,

6    legal, jurisdictional, or other defects.  *United States v. Little*, 608 F.2d 296, 299 (8th Cir. 1979)

7    (holding that the two remedies are "substantially equivalent"); *Pitts v. United States*, 763 F.2d

8    197, 199 n.1 (6th Cir. 1985) (noting that the primary distinction between the two petitions is the

9    petitioner's custodial status, and that standards for granting relief under a writ of error coram

10   nobis and under a § 2255 motion "are substantially the same."); *United States v. Travers*, 514

11   F.2d 1171, 1173 n.1 (2d Cir. 1974) (same).  The writ of coram nobis has become "in essence,

12   habeas for those not in federal custody."  David Wolitz, *The Stigma of Conviction: Coram Nobis,*

13   *Civil Disabilities, and the Right to Clear One's Name*, 2009 B.Y.U.L. Rev. 1277, 1287 (2009).

14       Both the Supreme Court and the Ninth Circuit have long made clear that the writ of error

15   coram nobis is "a highly unusual remedy, available only to correct grave injustices in a narrow

16   range of cases where no more conventional remedy is applicable."  *United States v. Riedl*, 496

17   F.3d 1003, 1005 (9th Cir. 2007); *Carlisle v. United States*, 517 U.S. 416, 429 (1996) ("'[I]t is

18   difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis]

19   would be necessary or appropriate.'") (internal citation omitted).

20       A petitioner must show the following to qualify for coram nobis relief: (1) a more usual

21   remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3)

22   adverse consequences exist from the conviction sufficient to satisfy the case or controversy

23

24

1  requirement of Article III; and (4) the error is of the most fundamental character.  *Hirabayashi v.*

2  *United States*, 828 F.2d 591, 604 (9th Cir. 1987).

3                                    **III.    DISCUSSION**

4          Petitioner contends that the following errors are sufficiently egregious to justify granting

5  her petition for a writ of coram nobis: 1) the Government's "Star Witness" lied about her true

6  name under oath at trial; 2) the Johnsons' Aberdeen medical practice's status as a rural health

7  clinic precluded the possibility of "upcoding"; 3) a 2017 Final Rule change impacts Petitioner's

8  case, 4) Ms. Johnson did not have the opportunity to challenge information contained in the

9  declaration of a Government witness who did not testify at trial; and 5) the Government withheld

10 information favorable to Petitioner.  (Dkt. Nos. 720, 724, 730.)

11         **A.  Trial Witness Allegedly Giving Incorrect Last Name**

12         Petitioner contends that the Government's "star witness", a former employee of the

13 Johnson Clinics, lied when she gave a different last name when testifying during the trial.  (Dkt.

14 Nos. 724 at 5; 730 at 1-2.)  Petitioner contends that this witness, Elizabeth V. Camp, falsely gave

15 her name as Elizabeth Hughes during the trial in 2011, and that in 2016 Ms. Camp/Hughes was

16 arrested on charges stemming from her alleged theft of gift cards while serving as an employee

17 of the United States Postal Service.  (*Id.*)

18         The Government argues that the evidence cited by Ms. Johnson shows that this witness

19 was known by a different name in 2016, and that even then, she was known by two different

20 names.  (Dkt. No. 728 at 3.)  The evidence provided by Petitioner appears to indicate that the

21 witness in question was known by both names in 2016.  (Dkt. No. 726.)

22         None of the evidence presently before the Court explains why the witness goes by two

23 different last names, or when she first opted to do so.  Nor does the evidence support the

24

conclusion that the witness was lying when she gave her name as Elizabeth Hughes during the 2011 trial.  As to the evidence concerning the witness's alleged criminal behavior, this conduct occurred several years after Ms. Johnson's trial ended, and could not have been used to impeach the witness's testimony at trial.

The Court finds no error with respect to the witness's last name, and certainly no error of "the most fundamental character" that would justify granting coram nobis relief.

### B.  Whether the Johnsons' Aberdeen Medical Practice's Status as a Rural Health Clinic Precluded the Possibility of "Upcoding"

Petitioner alleges that during the trial, she requested Rural Health Clinic records associated with the Johnsons' Aberdeen medical practice that were not produced.  (Dkt. No. 724 at 20.)  Petitioner contends that following her release from prison, she obtained records of claims submitted under the Rural Health Clinic number.  (*Id.* at 19-20.)  Petitioner argues that Rural Health Clinic claims are paid an interim rate for each face-to-face encounter, precluding the possibility of the "upcoding" that was the basis for Petitioner's underlying convictions.  (Dkt. Nos. 724 at 19-20; 730 at 3-4.)

The Government contends that in pre-trial pleadings, it submitted a declaration that the Aberdeen clinic "never submitted any insurance claims to Medicare under its Rural Health Clinic certification number."  (Dkt. No. 728 at 4.)  The Government argues that the documents submitted by Ms. Johnson in connection with her petition does not contradict this claim, and that the insurance claims underlying Ms. Johnson's convictions were inflated CPT codes unrelated to the Aberdeen clinic's status as a Rural Health Clinic.  (*Id.*)

The documents submitted by Petitioner in support of her contention consist of correspondence between the Aberdeen clinic and the Centers for Medicare and Medicaid Services ("CMS") concerning the clinic's Medicare reimbursements in 2007 and 2008.  (Dkt.

No. 726.)  The documents in question do not, on their face, contradict the Government's assertion or otherwise present an error that would meet the standard for coram nobis relief.

The Court further notes that these documents have been submitted to the United States District Court for the Eastern District of California on at least two occasions in connection with habeas corpus petitions filed by Antoine Johnson.  *Johnson v. Ponce*, Case No. 2:16-cv-01037-JAM-AC, Dkt. No. 20 (E.D. Cal. 2017); *Johnson v. Thompsen*, 2:18-cv-01977-JAM-AC, Dkt. No. 1 (E.D. Cal. 2017).

Accordingly, Petitioner has not established error or presented a valid reason for not attacking her conviction on this basis earlier.

### C.  Whether Ms. Johnson Had the Opportunity to Challenge Information Contained in the Declaration of a Witness who Did Not Testify

Petitioner contends that in its closing argument, the Government referred to statements contained in the declaration of Jerilyn McClain, a branch manager with CMS's Division of Survey and Certification, who stated that the Johnsons' clinic never submitted any health insurance claims to Medicare under its Rural Health Clinic certification number.  (Dkt. Nos. 127 at 2; 730 at 5.)  Petitioner argues that she was deprived of the opportunity to confront either Ms. McClain or the prosecutor concerning this statement, which she contends is false.  (Dkt. No. 730 at 5-6.)  As discussed above, Petitioner has not established that the Government's statement is false and has not provided a valid reason for failing to attack her conviction on this basis earlier.

### D.  Whether the Government Withheld Information Favorable to Petitioner

Citing three pre-trial motions for discovery (Dkt. Nos. 103, 111, 215), Petitioner contends that the prosecution withheld key evidence favorable to her.  (Dkt. No. 730 at 6.)  However, the motions for discovery cited by Petitioner were denied by the Court (Dkt. Nos. 166, 353), and

1    Petitioner has not presented a valid reason for failing to attack her conviction on this basis

2    earlier.

3               **E.  Whether a 2017 Rule Change Impacts Petitioner's Case**

4          During the 2011 trial, Defendants moved to dismiss the indictment against them pursuant

5    to Federal Rule of Criminal Procedure 12(b)(3)(c) and 18 U.S.C. § 3504, arguing that the use of

6    audio and video recording equipment by undercover agents was unlawful because the agents

7    enrolled in a drug abuse treatment program as patients for the purpose of investigating a

8    suspected violation of law.  (Dkt. Nos. 107 and 154.)  Defendants argued that because Dr.

9    Johnson was running a substance abuse treatment program, federal regulations required the

10    agents to obtain a court order prior to audio and video recording Defendants' patients.  (*Id.*)

11          The Court denied Defendants' motion, finding that Dr. Johnson did not "hold himself

12    out" as a substance abuse treatment program and that the agents in question did not "enroll" in a

13    substance abuse treatment program, and therefore did not come within the meaning of

14    "undercover agent" for purposes of the regulations.  (Dkt. No. 387 at 5-6.)

15          Petitioner contends that a 2017 Final Rule change by the Substance Abuse Mental Health

16    Services Administration ("SAMSHA"), the section of the U.S. Department of Health and Human

17    Services that oversees the federal regulations at issue in the underlying case, clarifies the

18    meaning of what it means for a physician's office to "hold itself out" as a substance abuse

19    treatment program in a manner that impacts Petitioner's case.  (Dkt. Nos. 724 at 9; 730 at 7-8.)

20          Dr. Johnson has presented this argument before, both in this Court and in other district

21    courts.  *See e.g., Johnson v. United States Probation and Pretrial Services*, Case No. 2:21-cv-

22    05125-JCC, 2021 WL 4902085 (W.D. Wash. Oct. 21, 2021); *Johnson v. Salazar*, Case. No.

23    2:18-cv-0988-MCE-AC, No. 2:18-cv-1977-JAM-AC, No. 2:18-cv-2580 MCE-AC, 2020 WL

24

901479 (E.D. Cal. Feb. 25, 2020), *report and recommendation adopted*, 2020 WL 1274132 (E.D. Cal. Mar. 17, 2020).

The United States District Court for the Eastern District of California considered this argument in connection with a habeas corpus petition filed by Dr. Johnson, concluding that the changes to the applicable rule were minor, and were not "substantive or relevant" to Dr. Johnson's claim.  *Johnson v. Salazar*, Case No. 2:17-cv-01310, 2017 WL 6447997 at *8 (E.D. Cal. Dec. 15, 2017), *report and recommendation adopted*, 2018 WL 1382364 (E.D. Cal. Mar. 19, 2018).  The Court concurs, and finds nothing in the revised rule to warrant granting coram nobis relief.

## IV.    ORDER

For the reasons set forth above, Petitioner's petition for a writ of coram nobis (Dkt. No. 720) is DENIED.

Dated this 1st day of September, 2022.

David G. Estudillo
United States District Judge